FILED

FEB 1 7 2009

ROBERT T. BRAITHWAITE
U.S. MAGISTRATE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br>TONYA BARNEY<br>Defendant. | REPORT AND RECOMMENDATIONS<br><br>2:08-CR-00140-CW |

Before the court is a Motion to Suppress submitted by Defendant, Tonya Barney. (File Entry #12.) After thorough review and consideration of the testimony and evidence presented at the evidentiary hearing, the parties' pleadings, and the subsequent oral arguments, the court recommends that Defendant's Motion to Suppress be denied.

## FACTUAL BACKGROUND

Brad Cox, a special agent with the DEA testified at the Motion to Suppress hearing that he had worked over seventeen years in law enforcement, with over 1,000 drug cases, including undercover work, and work with informants. (Document # 26, Official Transcript of Evidentiary Hearing on Motion to Suppress, held June 23, 2008 (hereafter referred to as "Tr.____"), Tr. 6-7). Washington County Drug Task Force (hereinafter WCDTF) Commander Scott Staley

testified that he had eighteen years experience in law enforcement, extensive experience with drug cases, and that he had been with the WCDTF the last three years. (Tr. 57.)

Agent Cox further testified that Dale Brady and Michelle Olsen were arrested on federal drug charges on February 26th, 2008 (Tr. 8, 11.) Both Brady and Olsen agreed to work with the DEA and were hopeful that their cooperation would "...lead to less time..." in their case. (Tr. 12).

Independent of, and prior to Defendant's arrest, she had been suspected of being a likely drug dealer based on reports from drug users who provided this information to the WCDTF. (Tr. 59-61.)

DEA and WCDTF agents interviewed Brady and Olsen separately. Brady said that he and Olsen obtained methamphetamine directly from Defendant Tonya Barney and that he owed Defendant about $100.00 for a previous the methamphetamine transaction. (Tr. 16.)

Both Brady and Olsen said Defendant was their main source of supply for methamphetamine. (Tr. 17.)

Brady said from what he knew, Defendant's supply source was in Las Vegas and she made trips there once or more per week. (Tr. 17-18). He also described where Defendant lived and the color of car she drove.

As he was being interviewed, Brady volunteered that even as they spoke Defendant was then "in route to or from Las Vegas to pick up drugs." (Tr. 20.)

Olsen provided the same information as Brady in regards to Defendant, and also said she had lived with Defendant several months at Defendant's residence in Ivins, Utah. (Tr 21.) Olsen

also said: Defendant was her main supplier of methamphetamine; routinely went to Las Vegas to obtain methamphetamine, providing Olsen and Brady five ounces a week; and that Defendant's car was a red Ford type of passenger car. (Tr. 22.)

Olsen provided the Defendant's cell phone number: (435-216-2175). (Tr 23.) Under DEA observance five recorded phone calls were then completed between Defendant and Olsen in which, among other things, Defendant said she was on her way to or from Las Vegas and that Brady still owed her money. (Tr. 27).

Pursuant to DEA's instructions, Olsen told Defendant she had another person "that came down" and had $850.00. Defendant asked if they could round up more money, and Olsen said she could round up a total of $1,200. Agent Cox and Commander Staley said that this figure was significant because that was the then-going rate for an ounce of methamphetamine, depending on the quality of the drug. (Tr. 28-29, 45-46, 71.)

Olsen advised Defendant "the guy" she was with was getting nervous and Defendant said "tell him this person has got whatever, got made," (Tr 30.) and, "You know what I mean, you know what I mean?" to which Olsen replied, "Yes I do." (Tr. 31.) To agent Cox and Olsen this was code for the drugs being obtained and Defendant being en route to St. George. (Tr. 30-31.) Text messages between the two also included references to Defendant being on her way back. (Tr. 33.)

In the last recorded call, Defendant said she would return at noon or earlier. (Tr. 33.) This information was relayed to Commander Staley who had personally been stationed on I-15 watching for Defendant's return. Staley had previously been supplied with Defendant's car

description including her license plate number (309 YJS). (Tr. 49.) Staley saw a car matching the Description of Defendant's car, verified the licence plate, and identified Defendant within the car in the passenger's seat as the car passed his location. (Tr. 36, 73-74.) Staley followed Defendant's car after it exited the freeway, and stopped it. The car was a red Ford Escort that came back registered to Defendant. (Tr. 37.)

Commander Staley said he stopped Defendant's car based on probable cause to believe the car contained illegal drugs. (Tr. 72-73.) Tim Tidwell was driving, and Defendant was in the passenger's seat. No traffic offense was observed. However, upon running Tidwell's licence it was determined his driver's licence was not valid. Upon approaching the vehicle, Commander Staley asked to see the driver's hands and asked him to exit the car. (Tr. 75) Having seen "suspicious" movement, Commander Staley feared danger or destruction of evidence. (Tr. 75.)

Commander Staley searched Defendant's vehicle where he found a methamphetamine pipe on the floor in front of where Defendant had been sitting, two methamphetamine pipes in the sweater on Defendant's seat, and over fifty grams of methamphetamine contained in different baggies in the trunk. (Tr. 37-38, 49-50, 52, 77.) Field testing at the scene and tests conducted later at the DEA lab confirmed the substance as methamphetamine. (Tr. 38, 77.)

## PROCEDURAL HISTORY

An indictment was filed on March 12, 2008. (File Entry #1.) On May 8, 2008, Defendant filed her Motion to Suppress the evidence obtained during the stop and search. (File Entry #12.) The case was assigned to United States District Judge Dale A. Kimball, who referred the case to

United States Magistrate Judge Robert T. Braithwaite, pursuant to 28 U.S.C. Sec. 636(b)(1)(B), on May 16, 2008. (File Entry #14.)

An evidentiary hearing on the Motion to Suppress was held on June 23, 2008. (File Entry #18.) Defendant then filed a memorandum in support of her Motion on November 12, 2008. (File Entry #28.) The Government filed its memorandum opposing the Motion to Suppress on December 3, 2008. (File Entry #39.)

On February 4, 2008, the court held oral arguments. (File Entry #41); and thereupon took the matter under advisement.

## **ANALYSIS**

Defendant seeks to suppress any evidence seized during the February 26, 2008 traffic stop. In addition to challenging the initial stop, Defendant argues that the arresting officer lacked legal authority to search Defendant's vehicle absent a Search Warrant. As a result, Defendant argues that all evidence gained through the search of vehicle must be suppressed.

The Fourth Amendment protects the "right of the people to be secure in their persons houses papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV. "Warrantless searches are per se unreasonable subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). As the government points out, automobiles are such an exception: "(w)hen federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband." *Florida v. White*, 526 U.S. 559, 563-64 (1999).

Law enforcement officers in the present case clearly had probable cause to make an arrest based upon the facts and observations they had accumulated, including:

-known drug users had informed the WCDTF that Defendant was a drug dealer.

-more specifically, Mr. Brady and Ms. Olsen separately identified Defendant as their weekly source of methamphetamine.

-Brady said that Defendant's supply source was in Las Vegas and that she was, at that moment traveling to Las Vegas to secure methamphetamine.

-Olsen also said that Defendant's drug source was in Las Vegas and Defendant routinely traveled there to procure the drugs.

-Olsen had previously lived with the Defendant and was able to provide unusually specific facts about Defendant which were all verified, to wit: Defendant's address, her cell phone number, a description of Defendant's car and the license plate number.

-law enforcement monitored calls and conversations between Olsen and Defendant in which Defendant verified that she was returning with drugs and negotiated a sales price. Defendant verified that she was in Las Vegas and provided an estimated time of arrival which proved out.

Since the officers had probable cause to believe that Defendant had contraband in her vehicle, they were under no obligation to obtain a warrant before searching the car. *United States v. Arzaga*, 9 F.3d 91 (10th Cir. 1993). Obtaining a warrant under such circumstances is not required, and "the agents' time and opportunity to obtain a warrant are irrelevant, as

constitutional analysis ends with finding probable cause." United States v. Crabb, 952 F.2d 1245, 1246 (10th Cir. 1991).

Thus, the court recommends that Defendant's motion to suppress be denied.

## RECOMMENDATION

Based on the foregoing analysis, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress evidence seized during the search of Defendant's vehicle ( File Entry # 12) be denied.

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby noticed of their right to object to the same. The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. Section 636(b), within ten (10) days after receiving it. Failure to file objections to both factual and legal findings may constitute a waiver of those objections on subsequent appellant review.

DATED this 17 day of February of 2009.

BY THE COURT:

ROBERT T. BRAITHWAITE
**U.S. Magistrate Judge**